IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| CARL A. RAGASA,<br><br>    Plaintiff,<br><br>    vs.<br><br>COUNTY OF KAUA'I; ROBERT F. WESTERMAN; KALANI VIERRA; NORMAN HUNTER; JOHN DOES 1-50; JANE DOES 1-50; DOE ASSOCIATIONS 1-50; DOE PARTNERSHIPS 1-50; DOE CORPORATIONS 1-50; AND DOE GOVERNMENTAL AGENCIES 1-50,<br><br>    Defendants. | CIVIL NO. 14-00309 DKW-BMK<br><br>**ORDER GRANTING INDIVIDUAL CAPACITY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

**ORDER GRANTING INDIVIDUAL CAPACITY DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Plaintiff Carl Ragasa alleges that the County of Kauai Fire Department ("KFD") retaliated against him after he reported improper conduct by fellow KFD employees that included the falsification of time sheets and the theft of gas. Ragasa brings claims against the County and his supervisors and co-workers, Robert F. Westerman, Kalani Vierra, and Norman Hunter, in their official and

individual capacities. Because Ragasa cannot state claims against the individual capacity defendants based on municipal liability under 42 U.S.C. § 1983, *respondeat superior* liability, or the Hawaii Whistleblowers Protection Act, Haw. Rev. Stat. ("HRS") § 378-62, the individual capacity defendants are entitled to judgment on the pleadings. Ragasa is granted leave to amend only his claim for intentional infliction of emotional distress.

## BACKGROUND

Ragasa is employed by KFD as a Water Safety Officer. Complaint ¶ 4. Defendant Vierra is a KFD Ocean Safety Director, and Defendant Hunter is a KFD Water Safety Officer Supervisor. Both supervise Ragasa. Complaint ¶¶ 7-8. As Chief of the KFD, Defendant Westerman is in charge of the entire department, including Ragasa and his supervisors. Complaint ¶ 6.

Ragasa alleges that, in 2010, he reported to Hunter that he observed another KFD employee stealing gas from the County. According to Ragasa, that same employee was engaged in a "side business" with Vierra. After reporting the gas theft to Hunter, Ragasa alleges that the employee-thief was transferred to another station away from Ragasa, but was not otherwise disciplined. Complaint ¶ 10.

In early 2012, Ragasa reported to Hunter that a different KFD employee was using illegal drugs while on duty. Ragasa alleges that this employee was Hunter's

friend and was similarly transferred to another station so that Ragasa could not observe his illegal conduct. Complaint ¶ 11.

On or about October 29, 2012, Ragasa again raised the issue of gas theft by KFD employees and alleged a cover-up of the theft directly to Vierra. Around the same time, Ragasa also reported to Vierra that an unnamed KFD supervisor was advising lifeguards to falsify timesheets relating to their training hours. Complaint ¶ 12.

According to Ragasa, shortly after his October 29, 2012 report to supervisors, Defendants retaliated against him through a "campaign of retaliatory harassment" that included:

> bombarding [Ragasa] with a slew of false accusations of misconduct dating back over two years prior; knowingly instituting disciplinary proceedings based upon such false accusations; placing [Ragasa] on leave without pay while they purportedly investigated the charges that [Ragasa] engaged in misconduct years earlier; disparate treatment with respect to application of Kauai County rules and discipline of [Ragasa]; and attempting to alienate [Ragasa] from his co-workers.

Complaint ¶ 14. Ragasa contends that all Defendants were aware of his reporting of illegal and/or improper conduct by KFD employees. Complaint ¶ 13.

Ragasa received a written notice of disciplinary action for what he alleges were false or exaggerated allegations of misconduct in December 2012, and thereafter received additional written allegations of misconduct from the County,

signed by Westerman. Complaint ¶ 15. Ragasa contends that, from 2010 to the present, Defendants have engaged in a pattern and practice of retaliatory harassment against at least five other unnamed KFD employees who reported illegal and/or inappropriate conduct by other County employees. Complaint ¶ 16. Ragasa lists the following forms of retaliatory harassment by Defendants:

> instructing KFD supervisors to target said employees [including Ragasa], watch them closely, and find any reason to write them up for discipline; transferring said KFD employees to unfavorable locations; encouraging other employees to make false and/or exaggerated allegations of misconduct and initiating disciplinary proceeding based upon such allegations; disproportionately disciplining the employees' engaged in protected conduct for minor infractions; and verbally harassing said employees.

Complaint ¶ 17. Ragasa believes that Defendants conspired with one another and with other unnamed employees to retaliate against him for speaking out against improper conduct by KFD employees by:

> instructing KFD supervisors to "target" [Ragasa] for disciplinary action because [Ragasa] was causing trouble for KFD, and by encouraging employees to assert allegations of misconduct against [Ragasa] that were false, misleading, and/or exaggerated. Many such allegations were used by Defendants to initiate disciplinary proceedings against [Ragasa], place him on administrative leave, and were later dropped, amended or not sustained. The multiple suspensions and/or leaves without pay
> caused a financial burden on [Ragasa] and his family.

Complaint ¶ 18.

Ragasa asserts the following claims: (1) First Amendment retaliation and conspiracy under 42 U.S.C. § 1983 and the Hawaii State Constitution (Count I); (2) municipal liability under 42 U.S.C. § 1983 (Count III); (3) Hawaii Whistleblowers Protection Act ("HWPA") liability pursuant to HRS § 378-62 (Count V); (4) intentional infliction of emotional distress ("IIED") (Count VI); and (5) *respondeat superior* and/or vicarious liability against the County (Count VII).[1] Westerman, Vierra, and Hunter are sued in both their official and individual capacities. Vierra, in his individual capacity, seeks judgment on the pleadings on Counts III, V, VI, and VII. Westerman and Hunter, also in their individual capacities, join in Vierra's motion.

## STANDARD OF REVIEW

The standard governing a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion. *United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir.2011). "[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are

---

[1] The Complaint does not include a Count II or a Count IV.

true even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677.

For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true, while the allegations of the moving party that have been denied are assumed to be false. *See Hal Roach Studios v.. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A court evaluating a Rule 12(c) motion must construe factual allegations in a complaint in the light most favorable to the nonmoving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Under Rule 12(c),

"Judgment on the pleadings is properly granted when, accepting all factual allegations as true, there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming*, 581 F.3d at 925); *accord Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937 n.1 (9th Cir. 2011).

## DISCUSSION

### I. Unopposed Claims (Counts III and VII)

In opposition to the motion, Ragasa acknowledges that the County itself is the only defendant for his municipal liability claim under Section 1983 (Count III), and his claim based on *respondeat superior* and/or vicarious liability (Count VII). In fact, Counts III and VII appear to be pled only against the County. To the extent these Counts can be read to include claims against the individual capacity defendants, however, they fail to state claims against Vierra, Westerman, and Hunter in their individual capacities. Accordingly, the motion is GRANTED as to Counts III and VII.

### II. HWPA Claim Against Individual Employees (Count V)

Count V alleges that—

> 34. Plaintiff engaged in protected activity by reporting to KFD suspected violations of a law, rule, ordinance, or regulation

>    adopted pursuant to the laws of this State, a political subdivision of this State, and/or the County of Kauai.
>
> 35. Defendants threatened and/or otherwise discriminated against Plaintiff because he engaged in such protected activity in violation of Hawaii Revised Statute § 378-62.

Under the HWPA, it is unlawful for an employer to discriminate against an employee because the employee "reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of [a] law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States." HRS § 378-62(1)(A). To establish a prima facie claim of retaliation under the HWPA, Ragasa must prove that (1) he engaged in a protected activity, (2) he was subjected to an adverse employment action, and (3) the adverse employment action resulted because of the participation in the protected activity. *See Cambon v. Starwood Vacation Ownership, Inc.*, 945 F. Supp. 2d 1133, 1142-43 (D. Haw. 2013); *Griffin v. JTSI, Inc.*, 654 F. Supp. 2d 1122, 1130-32 (D. Haw. 2008) (citing *Crosby v. State Dep't of Budget & Fin.*, 76 Hawaiʻi 332, 876 P.2d 1300, 1310 (1994)).

Defendants seek judgment on Ragasa's HWPA claim based principally on the recent Hawaiʻi Supreme Court case, *Lales v. Wholesale Motors Co.*, 133 Hawaiʻi 332, 328 P.3d 341 (2014), which forecloses individual liability under HRS § 378-2 against co-employees and supervisors. In *Lales*, the Hawaiʻi Supreme

Court held that, individual employees are not liable as "employers" for harassment and retaliation claims under HRS §§ 378-2(1)(A) and 378-2(2). Following *Lales,* this Court, in *Onodera v. Kuhio Motors Inc.*, 2014 WL 1031039 (D. Haw. Mar. 13, 2014), applied the reasoning set forth in *Lales* to the HWPA based on the similarities in the legislative histories and the definitions of "employer." *Onodera* noted that, before *Lales* finally settled the issue of individual liability in the state courts, this district court had "analyzed the meaning of 'employer' under HRS 378-2 and under the HWPA, and concluded that the definition under both statutes is the same." *Onodera,* 2014 WL 1031039, at *7.

> Nothing in the legislative history of section 378-62 and of section 378-61 evidences any intent that the definition of "employer" in section 378-61 be read more broadly than the definition in section 378-1. . . . It makes little sense to treat claims under section 378-2(2) differently from identical claims under section 378-62. . . . Because the legislature did not clearly indicate an intent to include individuals in the definition of "employer" in section 378-61, this court does not stretch to give that statute such a meaning.

*Id.* at *8 (quoting *Lum v. Kauai County Council*, 2007 WL 3408003, at *20-21 (D. Haw. Nov. 9, 2007)). Accordingly, *Onodera* extended the rationale of *Lales* to the HWPA, and dismissed HWPA claims against the individual capacity defendants. *See id.*

9

Other decisions from this district have followed suit. *See, e.g., Ritchie v. Hawai'i*, 2014 WL 4905336, at *8 (D. Haw. Sept. 30, 2014) (Granting motion for judgment on the pleadings on HWPA claim against individual capacity defendant, noting that "[a]lthough Hawai'i courts have not ruled on the issue yet, this Court finds the reasoning in *Onodera* persuasive."); *Hillhouse v. Hawaii Behavorial Health, LLC*, 2014 WL 4662378, at *8 (D. Haw. Sept. 18, 2014) ("Although Hawai'i courts have not ruled on the issue yet [of whether a member of an LLC can be sued in his individual capacity under the HWPA], this Court finds the reasoning in *Onodera* persuasive."). Ragasa cites no compelling authority to the contrary.[2]

Based upon this Court's prior decision in *Onodera*, interpreting *Lales* to foreclose similar state law claims against individual employees and supervisors, the Court concludes that Ragasa cannot maintain his HWPA claim against Vierra, Westerman and Hunter in their individual capacities. Accordingly, the motion is GRANTED as to Count V.

---

[2] Ragasa instead relies solely on pre-*Lales* case law, *Black v. Correa*, 2007 WL 3195122 (D. Haw. Oct. 30, 2007), the value of which has at least been called into question by *Lales*.

## III. IIED Claim (Count VI)

Ragasa alleges in Count VI that "Defendants maliciously, knowingly, intentionally, recklessly, willfully, deliberately, engaged in outrageous conduct, without regard for the rights, interests, and well-being of Plaintiff, and thereby caused Plaintiff to suffer severe and/or extreme emotional distress." Complaint ¶ 38. Defendants seek judgment on Ragasa's IIED claim because it is preempted by the Hawaii Workers' Compensation Act, HRS § 386-5, and because Ragasa cannot establish the requisite elements of this claim.

### A. Count VI Not Barred By the Hawaii Workers' Compensation Act

Ragasa does not dispute that individual supervisory employees acting in the scope of their employment are exempt from liability for certain tort claims under the Hawaii Workers' Compensation Act, HRS § 386-5. He contends, however, that the statute does not bar his claims against the individual capacity defendants to the extent his emotional distress injuries were caused by their willful and wanton misconduct.

The Hawaii Workers' Compensation Act provides a remedy to an employee who "suffers personal injury . . . by accident arising out of and in the course of the employment . . . proximately caused by or resulting from the nature of the employment." HRS § 386-3(a). This remedy is exclusive:

> The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

HRS § 386-5. While Section 386-8 "extends [this] immunity from suit to an injured worker's co-employees," *see Iddings v. Mee-Lee*, 82 Hawai'i 1, 6, 919 P.2d 263, 268 (1996), "[a]nother employee of the same employer shall not be relieved of his liability as a third party, if the personal injury is caused by his wilful and wanton misconduct." HRS § 386-8. Further, while the Hawaii Workers' Compensation Act bars claims based on negligence, it does not bar claims based on the intentional conduct of an employer or employee because such claims do not arise out of "accidents" related to employment. *See, e.g., You v. Longs Drugs Stores California, LLC*, 937 F. Supp. 2d 1237, 1260 (D. Haw. 2013) ("[A] supervisor may have 'co-employee' (not employer) liability for 'wilful and wanton conduct' under section 386-8 of Hawaii Revised Statutes.") (citing *Iddings v. Mee-Lee*, 82 Hawai'i 1, 21, 919 P.2d 263, 283 (1996)); *Hughes v. Mayoral*, 721 F. Supp. 2d 947, 964 (D. Haw. 2010); *Kahale v. ADT Auto. Servs., Inc.*, 2 F. Supp. 2d

1295, 1302 (D. Haw. 1998) (citing *Furukawa v. Honolulu Zoological Soc.*, 85 Hawaiʻi 7, 18, 936 P.2d 643 (1997)).

Ragasa alleges in Count VI that Defendants "maliciously, knowingly, intentionally, recklessly, willfully, deliberately, engaged in outrageous conduct, without regard for the rights, interests, and well-being of Plaintiff, and thereby caused Plaintiff to suffer severe and/or extreme emotional distress." Complaint ¶ 38. Ragasa sufficiently alleges "willful and wanton" conduct, including, for example, that the individual defendants conspired with one another to retaliate against him by:

> instructing KFD supervisors to "target" [Ragasa] for disciplinary action because [Ragasa] was causing trouble for KFD, and by encouraging employees to assert allegations of misconduct against [Ragasa] that were false, misleading, and/or exaggerated. Many such allegations were used by Defendants to initiate disciplinary proceedings against [Ragasa], place him on administrative leave, and were later dropped, amended or not sustained.

Complaint ¶ 18; *see also* Complaint ¶ 19 ("Defendants actions were oppressive malicious, willful and intentional, and warrant an award of punitive damages[.]"). The Court also agrees with Ragasa that his Complaint does not preclude an alternative claim that individual employee's actions were "willful and wanton," and, therefore, not within the scope of their employment. *See* Fed.R.Civ.P. 8(d)(2) and (d)(3) (authorizing the pleading of alternative or inconsistent theories or

defenses). Accordingly, the Hawaii Workers' Compensation Act does not bar Ragasa's IIED claim.

### B. Leave to Amend Is Granted To Allege Outrageous Conduct

Ragasa cannot maintain his IIED claim as currently set forth, however, because the alleged conduct does not meet the threshold for outrageousness. "The elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." *Hac v. Univ. of Haw.*, 102 Hawai'i 92, 106-07, 73 P.3d 46, 60-61 (2003) (adopting IIED standard from Restatement (Second) of Torts). "The question whether the actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury." *Nagata v. Quest Diagnostics Inc.,* 303 F. Supp. 2d 1121, 1127 (D. Haw. 2004).

The Restatement describes what constitutes "outrageous" conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

> atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d. (1965).

> An IIED claim cannot be sustained by "threats, annoyances, petty oppressions, or other trivialities." *Young v. Allstate Ins. Co.*, 119 Hawai'i 403, 425, 198 P.3d 666, 688 (2008) (quoting Restatement (Second) of Torts § 46 cmt. d); *see also Bragalone v. Kona Coast Resort Joint Venture*, 866 F. Supp. 1285, 1294 (D. Haw. 1994). Indeed, a plaintiff "must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46 cmt. d.

*Hughes*, 721 F. Supp. at 965. *See also* Restatement (Second) of Torts § 46, cmt. d. ("There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.").

This district court has explained the particularly high threshold for "outrageous" conduct in the context of employment cases:

> Hawaii's definition of outrageous conduct creates a very high standard of conduct in the employment context. *See Ross v. Stouffer Hotel Co.*, 76 Hawai'i 454, 879 P.2d 1037, 1048 (1994) (granting summary judgment for employer on employee's IIED claim); *Ingle v. Liberty House, Inc.*, Civil No.

15

> 94-0787(3), 1995 WL 757746, at *4 (Haw. Cir. Ct. Oct. 12, 1995) (noting, "In *Ross*, the Hawai'i Supreme Court recently has set an extremely high, standard for such a claim in the employment context[.]"). Under Hawai'i law, termination alone is not sufficient to support an IIED claim; rather, what is necessary is a showing of something outrageous about the manner or process by which the termination was accomplished. As stated in *Ingle*, "[a]lthough intentional infliction claims frequently are asserted in connection with employee dismissals, recovery is rare. Imposition of liability on this tort theory is likely only in the unusual case when an employer deliberately taunts an employee, or when an employer handles an employee with outrageous insensitivity." *Ingle*, 1995 WL 757746, at *4 (quotation omitted; emphasis added); *see also Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 852 (9th Cir. 1990) ("[d]ischarge, without evidence of more, does not create a case for emotional distress.").

*Ho-Ching v. City & Cnty. of Honolulu*, 2009 WL 1227871, at *12 (D. Haw. Apr. 29, 2009). *See also Simmons v. Aqua Hotels & Resorts, Inc.*, 130 Hawai'i 325, 332, 310 P.3d 1026, 1033 (App. 2013) ("Our case law is clear that termination alone, even if based on discrimination, is not sufficient to support an IIED claim without a showing of something outrageous about the manner or process of termination."); *Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 387, 14 P.3d 1049, 1068 (2000) (employee's allegations of termination based on age discrimination and of manager's "vicious" verbal attack, shouting, and criticism in front of other employees were insufficient to create a genuine issue of fact of outrageousness);

*Ross*, 76 Hawai'i at 465, 879 P.2d at 1048 (termination based on alleged marital status discrimination was insufficient to sustain IIED claim).

On the other hand, courts have found that "sexually harassing behavior, racial slurs, and accusations of criminal conduct could all possibly be considered outrageous conduct," *see Nagata*, 303 F. Supp. 2d at 1128 (citing *Lapinad v. Pacific Oldsmobile-GMC, Inc.*, 679 F. Supp. 991, 996 (D. Haw. 1988)), and conduct that does not fit into any of these categories may still raise a question of fact.  *Cf. id.* (determining that defendant's delay in disclosing error in drug test could be considered outrageous); *Machado v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers*, 454 F. Supp. 2d 1056, 1063 (D. Haw. 2006) (Denying motion to dismiss IIED claim against individual capacity defendant who "filed a false police report," "made a false report defaming and accusing Plaintiff of assaulting and robbing him at an illegal cockfight," "announced these false accusations at a general union meeting," and "announced that he filed for a temporary restraining order against Plaintiff."); *Weaver v. A-American Storage Mgmt. Co.*, 2011 WL 97651, at *8 (D. Haw. Jan. 12, 2011) ("Intentionally discriminating against an employee based on race, terminating him after only a few weeks in violation of federal and state law, evicting him, taking his residence and car, forcing him to remove his belongings to the street, and later giving false

information to prospective employers could constitute 'outrageous' conduct for purposes of IIED.").

Even assuming the truth of the allegations in the complaint, Ragasa has not met the "very high standard of conduct in the employment context" necessary to state a claim for IIED.  *Ho-Ching*, 2009 WL 1227871, at *12.  Without more, his allegations that the individual capacity defendants targeted, conspired, harassed, and disciplined him in retaliation for his reports of improper conduct by coworkers are not "so outrageous in character as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement § 46, cmt. d.  Accordingly, Count VI is dismissed for failure to state a claim for IIED.

Because amendment may be possible, and in light of the Court's specific discussion of IIED claims in the employment context, Ragasa is GRANTED leave to amend Count VI.  In doing so, however, the Court does *not* grant leave to add new parties, claims or theories of liability.

## CONCLUSION

On the basis of the foregoing, the Court GRANTS Defendant Kalani Vierra's Motion for Judgment on the Pleadings [dkt. no. 56]; Defendant Norman Hunter's Joinder [dkt. no. 58]; and Defendant Robert F. Westerman's Joinder [dkt.

no. 60]. Ragasa is GRANTED until **October 2, 2015** to file an amended complaint in accordance with this order.

IT IS SO ORDERED.

DATED: September 15, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Carl A. Ragasa v. County of Kaua'i, et al.;* Civil No. 14-00309 DKW BMK; **ORDER GRANTING INDIVIDUAL CAPACITY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**